IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| SHAWN M. JOYCE, | § |
| | § |
| Plaintiff, | § |
| | § |
| V. | §   NO. 4:23-CV-620-O |
| | § |
| YOUNG COUNTY SHERIFF'S OFFICE, | § |
| | § |
| Defendant. | § |

**MEMORANDUM OPINION AND ORDER**

Came on for consideration the motions of Defendants Alex Maiden and Jordan Roebuck for summary judgment.[1] The Court, having considered the motions, the response of Plaintiff, Shawn M. Joyce,[2] the reply, the record, and applicable authorities concludes that the motions must be **GRANTED**.

After the summary judgment motions had been fully briefed, Plaintiff filed what appears to be a sur-reply and docketed it as a counter motion for summary judgment. ECF No. 50. Plaintiff did not seek leave to file a sur-reply. Nor would a cross-motion for summary judgment be timely.

**I.   PLAINTIFF'S CLAIMS**

Plaintiff alleges that Defendants violated his Fourth Amendment rights by pulling him over "for a traffic violation which did not happen." ECF No. 8 at 5.[3] He alleges that he was detained

---

[1] The motions are virtually the same. For ease of reference, the Court will refer to Defendant Maiden's motion, ECF No. 32.

[2] Plaintiff has filed a number of documents containing the same information, ECF Nos. 40–48, although the affidavits as to each Defendant are different. ECF Nos. 44 & 47.

[3] The page reference is to "Page 5 of 9" reflected at the top right portion of the document on the Court's electronic filing system and is used because a handwritten page is included in the typewritten form used by Plaintiff.

1

for almost an hour even though Defendants told him that he was only receiving a warning. He repeatedly asked if he could leave and was told that he could not. Eventually a K-9 unit arrived and Defendants searched his vehicle. Plaintiff was arrested. *Id.*

## II.   GROUND OF THE MOTIONS

Each Defendant asserts that he is entitled to qualified immunity. ECF Nos. 32, 36.

## III.   APPLICABLE LEGAL STANDARDS

### A   Summary Judgment

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A fact is "material" if it could change the outcome of the litigation. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And a dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The Court views the evidence in the light most favorable to the nonmovant but need not comb through the record in search of evidence creating a genuine issue of material fact. *See Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003). Moreover, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### B.   Qualified Immunity

Qualified immunity insulates a government official from civil damages liability when the official's actions do not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). For a

right to be "clearly established," that right's contours must be "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Individual liability thus turns on the objective legal reasonableness of the defendant's actions assessed in light of clearly established law at the time. *Hunter v. Bryant*, 502 U.S. 224, 228 (1991); *Anderson*, 483 U.S. at 639-40. In *Harlow*, the Supreme Court explained that a key question is "whether that law was clearly established at the time an action occurred," because "[i]f the law at that time was not clearly established, an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to 'know' that the law forbade conduct not previously identified as unlawful." 457 U.S. at 818. If public officials of reasonable competence could differ on the lawfulness of defendant's actions, the defendant is entitled to qualified immunity. *Mullenix v. Luna*, 577 U.S. 7, 11 (2015); *Malley v. Briggs*, 475 U.S. 335, 341 (1986); *Fraire v. City of Arlington*, 957 F.2d 1268, 1273 (5th Cir. 1992).

In analyzing whether an individual defendant is entitled to qualified immunity, the court considers whether the plaintiff has alleged any violation of a clearly established right, and, if so, whether the individual defendant's conduct was objectively reasonable. *Siegert v. Gilley*, 500 U.S. 226, 231 (1991); *Duckett v. City of Cedar Park*, 950 F.2d 272, 276-80 (5th Cir. 1992). In so doing, the court should not assume that the plaintiff has stated a claim, i.e., asserted a violation of a constitutional right. *Siegert*, 500 U.S. at 232. Rather, the court must be certain that, if the facts alleged by the plaintiff are true, a violation has clearly occurred. *Connelly v. Comptroller*, 876 F.2d 1209, 1212 (5th Cir. 1989). Even if defendants are alleged to have acted in unison, the court must address the actions of each individually to determine whether qualified immunity applies. *Meadours v. Ermel*, 483 F.3d 417, 421-22 (5th Cir. 2007); *Stewart v. Murphy*, 174 F.3d 530, 537

(5th Cir. 1999).

A mistake in judgment does not cause an officer to lose his qualified immunity defense. In *Hunter*, the Supreme Court explained:

> The qualified immunity standard "gives ample room for mistaken judgments" by protecting "all but the plainly incompetent or those who knowingly violate the law." *Malley*, [475 U.S.] at 343. . . . This accommodation for reasonable error exists because "officials should not err always on the side of caution" because they fear being sued.

502 U.S. at 229. "[A]n allegation of malice is not sufficient to defeat immunity if the defendant acted in an objectively reasonable manner." *Malley*, 475 U.S. at 341. Further, that the officer himself may have created the situation does not change the analysis. That he could have handled the situation better does not affect his entitlement to qualified immunity. *Cass v. City of Abilene*, 814 F.3d 721, 731–32 (5th Cir. 2016); *Young v. City of Killeen*, 775 F.2d 1349, 1352-53 (5th Cir. 1985).

When a defendant relies on qualified immunity, the burden is on the plaintiff to negate the defense. *Kovacic v. Villareal*, 628 F.3d 209, 211-12 (5th Cir. 2010); *Foster v. City of Lake Jackson*, 28 F.3d 425, 428 (5th Cir. 1994). The standard is demanding. *Vincent v. City of Sulphur*, 805 F.3d 543, 547 (5th Cir. 2015). Although Supreme Court precedent does not require a case directly on point, existing precedent must place the statutory or constitutional question beyond debate. *White v. Pauly*, 580 U.S. 73, 79 (2017). That is, the clearly established law upon which the plaintiff relies should not be defined at a high level of generality, but must be particularized to the facts of the case. *Id.* Thus, failure to identify a case where an officer acting under similar circumstances was held to have violated a plaintiff's rights will most likely defeat the plaintiff's ability to overcome a qualified immunity defense. *Id.* at 79–80; *Surratt v. McClarin*, 851 F.3d 389, 392 (5th Cir. 2017).

## IV.   ANALYSIS

Texas law allows a person to be detained upon reasonable suspicion that the person committed a traffic violation. *Guerra v. State*, 432 S.W.3d 905, 911 (Tex. Crim. App. 2014). Authority for detention ends when the tasks tied to the traffic violation are or should have been completed. *Lerma v. State*, 543 S.W.3d 184, 193 (Tex. Crim. App. 2018) (citing *Rodriguez v. United States*, 575 U.S. 348, 354 (2015)). In other words, law enforcement may not extend the stop to engage in a fishing expedition for unrelated criminal activity. *Davis v. State*, 947 S.W.2d 240, 243 (Tex. Crim. App. 1997) (citing *Ohio v. Robinette*, 519 U.S. 33, 41 (1996) (Ginsburg, J., concurring)). Officers may, however, extend the stop if they develop a reasonable suspicion that other criminal activity has occurred or is occurring. *Lerma*, 543 S.W.3d at 191; *Lambeth v. State*, 221 S.W.3d 831, 836 (Tex. App.—Fort Worth 2007, pet. ref'd).

Texas law requires a driver to signal continuously for not less than the last 100 feet of movement of the vehicle before a turn. If an officer sees a vehicle turn without having properly signaled, he has reasonable suspicion to pull the car over. *United States v. Watson*, 751 F. App'x 592, 593 (5th Cir. 2019); *State v. Elias*, 339 S.W.3d 667, 675 (Tex. Crim. App. 2011). Likewise, if an officer observes that a vehicle has not maintained a single lane of traffic in a safe manner, he has reasonable suspicion to pull the car over. *United States v. Pena*, 227 F. App'x 324, 326 (5th Cir. 2007); *Aviles v. State*, 23 S.W.3d 74, 77 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd). The issue is not whether traffic laws were actually violated, but rather whether it was reasonable for the officer to believe that the law had been violated. *Pena*, 227 F. App'x at 326; *United States v. Ramirez*, 213 F. Supp. 2d 722, 724 (S.D. Tex. 2002). Plaintiff does not dispute that he had

5

committed a traffic violation[4] and there is no genuine issue about the initial traffic stop.

Once a vehicle has been lawfully detained for a traffic violation, officers may order the driver to get out of the vehicle without violating the Fourth Amendment. *Arizona v. Johnson*, 555 U.S. 323, 331 (2009). That is what happened here.

Officers may search a vehicle if they have probable cause to do so. *United States v. Ortiz*, 781 F.3d 221, 229 (5th Cir. 2015); *United States v. Fields*, 456 F.3d 519, 523 (5th Cir. 2006). Probable cause exists when "trustworthy facts and circumstances within the officer's knowledge . . . would cause a reasonably prudent man to believe the car contains contraband." *United States v. Guzman*, 739 F.3d 241, 246 (5th Cir. 2014) (quoting *United States v. Banuelos-Romero*, 597 F.3d 763, 767 (5th Cir. 2010)). Officers may "draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them." *United States v. Smith*, 952 F.3d 642, 648 (5th Cir. 2020). Making a probable cause determination requires the court to consider the totality of the circumstances rather than isolated factors. *United States v. Phillips*, No. 22-50745, 2024 WL 323498, at *3 (5th Cir. Jan. 29, 2024). The operative analysis involves an objective test independent of the officer's subjective belief. *Id.* (citing *Whren v. United States*, 517 U.S. 806, 813 (1996)).

"[A] dog sniff is not fairly characterized as part of the officer's traffic mission." *Rodriguez*, 575 U.S. at 356. Thus, to justify detaining a driver beyond completion of the traffic investigation, there must be reasonable suspicion of criminal activity. *Id.* at 358. As the Fifth Circuit has explained, there is "no constitutional stopwatch on traffic stops. Instead, the relevant question in

---

[4] Plaintiff's failure to address the issue in his summary judgment response constitutes a waiver of it. *Magee v. Life Ins. Co. of N. Am.*, 261 F. Supp. 2d 738, 748 n.10 (S.D. Tex. 2003) (citing cases). In any event, the video recordings of the stop reflect Plaintiff's acceptance of the reasons for the stop.

assessing whether a detention extends beyond a reasonable duration is 'whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly.'" *United States v. Brigham*, 382 F.3d 500, 511 (5th Cir. 2004) (quoting *United States v. Sharpe*, 470 U.S. 675, 686 (1985)). That an officer immediately calls for a dog sniff after the driver refuses to consent to the search of his vehicle is evidence of diligence. And, in that regard, a wait of twenty-one minutes for a dog to arrive is not unreasonable. *Phillips*, 2024 WL 323498, at *4 (citing cases holding that a thirty-five minute stop is not unreasonable, nor is a forty-five minute delay before calling a K-9 unit). *See* ECF No. 49 at 6, n. 12 (citing cases). Thus, if Defendants had a reasonable suspicion of criminal activity, the length of time it took for the dog to arrive and for the search to be conducted is reasonable under Fifth Circuit precedent. Once a dog alerts on a vehicle, as happened in this case, probable cause for a search of the vehicle exists. *United States v. Seals*, 987 F.2d 1102, 1106–07 (5th Cir. 1993).

Here, the evidence supports Defendants' position that they had reasonable suspicion of criminal activity by Plaintiff. Both Defendants recognized that Plaintiff was traveling down a known drug corridor. ECF No. 33, Def. App. 0054, ¶ 13; Def. App. 0062, ¶ 21. Based on his training, Defendant Maiden was suspicious of Plaintiff when he saw him drive through a gas station parking lot. He followed Plaintiff's car out of the lot and observed it swerve while driving. He also observed Plaintiff put on his left blinker for twenty-one seconds without turning, then turn left without using his blinker onto Power Plant Road, a private road. It was almost 11 p.m. and Plaintiff was not driving a company work truck (as would be expected on that road). His behavior was consistent with a person trying to avoid law enforcement. *Id.* Def. App. 0052–54, ¶¶ 4–8. Defendant Roebuck arrived after Plaintiff had been stopped. *Id.* Def. App. 0060, ¶ 3. Both

7

Defendants observed Plaintiff being overly chatty and volunteering irrelevant information and being particularly sweaty. *Id.* Def. App. 0054, ¶¶ 10–12, Def. App. 0055, ¶¶ 14–15, Def. App. 0056, ¶ 20, Def. App. 0061, ¶¶ 11, 12, 14, Def. App. 0062, ¶¶ 15, 17. Defendant Roebuck observed Plaintiff roll up his windows and lock his vehicle when he was asked to step out, which was unusual and led Roebuck to believe Plaintiff was concealing something. Def. App. 0062, ¶ 19. Defendant Maiden observed Plaintiff make inconsistent statements. Def. App. 0054, ¶¶9, 11, 12, Def. App. 0055, ¶ 14. Defendant Maiden also observed Plaintiff being overly nervous about being pulled over. Def. App. 0056, ¶ 23. When Plaintiff refused consent for a search of the vehicle, Defendant Maiden immediately called for a K-9 unit. Def. App. 0057, ¶¶ 24–25.

In his deposition, Plaintiff testified: There "was a lot of methamphetamines in Graham, Texas." ECF No. 33 at 0025 (page 95, lines 23–24). He was most likely sweating a lot. *Id.* at 009 (page 35, line 3), 034 (page 132, line 7). He commented on the video that his shirt was soaked and that he perspired easily. *Id.* at 023 (page 85, lines 21–23). He told Defendants he drank water, showing them all the water bottles in his car. *Id.* at 015 (page 55, lines 20–23). He was worried when he was pulled over. *Id.* at 018 (page 68, lines 19–25). He did not want to admit it, but if the video reflected that he apologized for swerving, he would not dispute it. *Id.* at 027 (page 101–02), 032 (page 122, lines 12–14). He did put his blinker on for an extended period of time, then turned it off, then he turned onto Power Plant Road, where he was stopped. *Id.* at 033 (page 126, line 25—page 127, line 14).

Defendants' summary of the video evidence appears to be accurate. ECF No. 32 at 1–9. Although it is difficult to tell from the grainy video footage how sweaty Plaintiff is at any particular time, Plaintiff admitted in his deposition that he was sweaty. The video evidence shows Plaintiff

8

drinking a bottle of water during the stop. Plaintiff did tell Defendants that he only drinks water and showed them numerous water bottles in his vehicle. The search of the vehicle confirmed the consumption of water. ECF No. 33, Exs. 1–3. Defendants could reasonably have concluded that Plaintiff was drinking a lot of water.

In sum, the Court cannot conclude that Plaintiff has met his burden of showing that Defendants are not entitled to qualified immunity. He cites petitions for writs of certiorari that were denied in cases affirming suspicion to extend traffic stops. *See United States v. Santillan*, 902 F.3d 49 (2d Cir. 2018), *cert. denied*, 139 S. Ct. 1467 (2019); *United States v. Gholston*, 1 F.4th 492 (7th Cir. 2021), *cert. denied*, 142 S. Ct. 1421 (2022). The one case seemingly supporting his position is based on facts that are distinguishable.[5] *Klaver v. Hamilton Cnty., TN,* No. 22-5083, 2022 WL 16647970 (6th Cir. Nov. 3, 2022), *cert. denied*, 143 S. Ct. 1004 (2023). Plaintiff has not cited any Texas cases in which officers acting under similar circumstances were held to have committed a constitutional violation. Defendants, on the other hand, have pointed to cases showing that search of a vehicle is authorized where, under the totality of the circumstances, trustworthy facts within the officer's knowledge would cause a reasonably prudent person to believe the car contained contraband. ECF No. 32 at 15, 19–20 (citing cases). The Court cannot say that it is beyond debate that Defendants did not have reasonable suspicion to extend the stop. Consequently, even if Defendants did not have reasonable suspicion, any violation was not clearly established. *See Thompson v. Richter*, No. 7:22-CV-0014-O, 2024 WL 3346296, at *8 (N.D. Tex. July 9, 2024).

Finally, in his amended complaint, Plaintiff alleges that Defendant Roebuck harassed him

---

[5] Nervousness and refusal to cooperate did not lend defendants a major justification for reasonable suspicion under Sixth Circuit law. *Klaver v. Hamilton Cnty., TN*, No. 22-5083, 2022 WL 1664970, at *6–*7 (6th Cir. Nov. 3, 2022), *cert. denied*, 143 S. Ct. 1004 (2023).

drinking a bottle of water during the stop. Plaintiff did tell Defendants that he only drinks water and showed them numerous water bottles in his vehicle. The search of the vehicle confirmed the consumption of water. ECF No. 33, Exs. 1–3. Defendants could reasonably have concluded that Plaintiff was drinking a lot of water.

In sum, the Court cannot conclude that Plaintiff has met his burden of showing that Defendants are not entitled to qualified immunity. He cites petitions for writs of certiorari that were denied in cases affirming suspicion to extend traffic stops. *See United States v. Santillan*, 902 F.3d 49 (2d Cir. 2018), *cert. denied*, 139 S. Ct. 1467 (2019); *United States v. Gholston*, 1 F.4th 492 (7th Cir. 2021), *cert. denied*, 142 S. Ct. 1421 (2022). The one case seemingly supporting his position is based on facts that are distinguishable.[5] *Klaver v. Hamilton Cnty., TN,* No. 22-5083, 2022 WL 16647970 (6th Cir. Nov. 3, 2022), *cert. denied*, 143 S. Ct. 1004 (2023). Plaintiff has not cited any Texas cases in which officers acting under similar circumstances were held to have committed a constitutional violation. Defendants, on the other hand, have pointed to cases showing that search of a vehicle is authorized where, under the totality of the circumstances, trustworthy facts within the officer's knowledge would cause a reasonably prudent person to believe the car contained contraband. ECF No. 32 at 15, 19–20 (citing cases). The Court cannot say that it is beyond debate that Defendants did not have reasonable suspicion to extend the stop. Consequently, even if Defendants did not have reasonable suspicion, any violation was not clearly established. *See Thompson v. Richter*, No. 7:22-CV-0014-O, 2024 WL 3346296, at *8 (N.D. Tex. July 9, 2024).

Finally, in his amended complaint, Plaintiff alleges that Defendant Roebuck harassed him

---

[5] Nervousness and refusal to cooperate did not lend defendants a major justification for reasonable suspicion under Sixth Circuit law. *Klaver v. Hamilton Cnty., TN*, No. 22-5083, 2022 WL 1664970, at *6–*7 (6th Cir. Nov. 3, 2022), *cert. denied*, 143 S. Ct. 1004 (2023).

"8 different times in which my 4th Amendment rights were violated." ECF No. 8 at 5. The allegation is wholly conclusory and insufficient to support a claim. Even had a claim been alleged, Plaintiff has not shown that Roebuck is not entitled to qualified immunity, much less that Roebuck violated his constitutional rights. That the conduct, if it occurred, was immature, inappropriate, and may have violated state law does not entitle Plaintiff to relief here.

## V.     CONCLUSION

Defendants' motions for summary judgment are **GRANTED** and Plaintiff's claims against them are **DISMISSED**. Plaintiff's sur-reply is **STRICKEN** from the record.

**SO ORDERED** this **1st day** of **August, 2024**.

_Reed O'Connor_
**UNITED STATES DISTRICT JUDGE**